**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

```
GREGORY BARTKO,

        Plaintiff,

        v.                                    Civil Action No. 26-489 (JEB)

BUREAU OF PRISONS, et al.,

        Defendants.
```

**MEMORANDUM OPINION**

Plaintiff Gregory Bartko is no stranger to this Court.  While incarcerated for fraud, he brought multiple *pro se* Freedom of Information Act suits seeking records related to his conviction.  See, e.g., Bartko v. U.S. Dep't of Just., 167 F. Supp. 3d 55 (D.D.C. 2016).  Having returned home, he now has a new target: his term of supervised release.  Bartko racked up significant time credits during his incarceration, which he believes should be applied to shorten his term of supervision.  Such a challenge would typically be brought as a habeas petition in the district where the supervision is occurring — in this case, the Northern District of Georgia. Bartko initially brought just such a challenge, which was rebuffed.  He now tries a different tack: suing under the Administrative Procedure Act to challenge what he asserts is a Bureau of Prisons policy of refusing to apply time credits to supervised release.  Specifically, he is suing the Bureau and the officials who run it — BOP's Director and the Attorney General — in their official capacities, asking this Court to declare the putative policy unlawful and vacate or enjoin it.  He also attaches a FOIA claim for records that he sought about the purported policy.  Plaintiff now moves for a preliminary injunction on both claims, which Defendants oppose while also moving to dismiss only the APA count.

1

As Bartko has not plausibly alleged any final agency action, the Court will dismiss the claim and deny Plaintiff's Motion for a PI on it. The Court likewise rejects the Motion for a PI on Plaintiff's FOIA count. Because Defendants do not move to dismiss that claim, however, it survives for now.

## I. Background

### A. Factual Background

Almost twenty years ago, Bartko was practicing law and trading securities in Georgia. United States v. Bartko, No. 09-321, ECF No. 1 (Indictment), ¶¶ 1–2 (E.D.N.C. Nov. 4, 2009); id., ECF No. 250 (Gov. Sent'g Mem.) at 4, 18 (E.D.N.C. Mar. 27, 2012). According to the Government, he was also running a scheme "to profit from fraudulent sales of investments . . . and to conceal those profits." Id., Indictment, ¶ 1. Bartko was charged with six counts stemming from the scheme — including conspiracy, mail fraud, and selling unregistered securities — and convicted of all six in 2010. Id., ECF No. 158 (Verdict) (E.D.N.C. Nov. 18, 2010). Now out of prison, he is serving a three-year term of supervised release. Id., ECF No. 257 (Minute Entry) (E.D.N.C. Apr. 4, 2012). Therein, says Bartko, lies his problem. He wants to be readmitted to the Georgia Bar, which categorically refuses entrance to any applicant still serving a sentence for a criminal conviction (apparently including supervised release). See Bartko v. Earles, No. 22-5031, ECF No. 80 (Order) at 2–3 (N.D. Ga. July 9, 2026); ECF No. 12 (PI Mot.) at 13. He has thus turned to attacking that last remaining piece of his sentence.

### B. Legal Background

The First Step Act of 2018 encourages prisoners to use their time behind bars on programs to help them reintegrate into society and build productive, law-abiding lives. To that end, the Act awards "time credits" to prisoners who "successfully complete evidence-based

recidivism reduction programming or productive activities." See 18 U.S.C. § 3632(d)(4)(A). Those credits knock time off of their incarceration.  For instance, under the baseline rule, "for every 30 days of successful participation" in such programs, the prisoner spends 10 fewer days locked up.  Id., § 3632(d)(4)(A)(i).

Prisoners, however, are sometimes released with time credits left over.  They understandably want those credits to go somewhere, so many have argued that remaining credits should be used to reduce time on post-incarceration supervised release.  The circuits have split over whether credits can be used that way.  Compare Gonzalez v. Herrera, 151 F.4th 1076, 1078 (9th Cir. 2025) (holding that they can be), with Rivera-Perez v. Stover, 171 F.4th 196, 199 (2d Cir. 2026) (holding that they cannot), and Hargrove v. Healy, 155 F.4th 530, 531 (6th Cir. 2025) (same).  Our Circuit has not yet weighed in.

C.    Procedural History

Now return to Bartko.  He says that he earned enough time credits while in prison that they would "effectively eliminate" his remaining time on supervised release — if only they were applied to it.  See PI Mot. at 3.  His first attempt at winning that relief used the obvious route: he filed a habeas petition in the Northern District of Georgia, where he is being supervised.  Bartko v. Chisholm, No. 25-1540, ECF No. 1 (Habeas Pet.) (N.D. Ga. Mar. 24, 2025).  That court denied his petition without prejudice, since he had not exhausted his administrative remedies before filing.  Id., ECF No. 33 (Order) at 9 (N.D. Ga. Mar. 16, 2026).

One might think that Bartko's next move would be to exhaust and refile.  Instead, he turned here, refashioning his petition for habeas corpus as a *pro se* claim under the APA. Plaintiff alleges that BOP is flouting the First Step Act by refusing to apply time credits to supervised release.  See ECF No. 7 (Am. Compl.), ¶¶ 22–23.  What is more, he says, the circuit

split has caused the agency to apply time credits in a way that depends on where someone lives — reducing time on supervised release in the Ninth Circuit, but not elsewhere. Id., ¶¶ 25–29. Bartko contends that the agency may not adopt such an inconsistent rule. Id. He has also tacked on a FOIA claim following his request to BOP for "all agency records . . . that reference or discuss the Ninth Circuit's decision" holding that unused time credits reduce time on supervised release. See ECF No. 7-1 (FOIA Req.) at 1. Unsatisfied with the agency's response, he seeks relief from this Court. See Am. Compl., ¶¶ 37–45.

Bartko has now filed a Motion for a Preliminary Injunction seeking emergency relief on both of his counts. See PI Mot. Defendants oppose and also move to dismiss the APA claim. See ECF No. 21-1 (MTD) at 1.

## II.      Legal Standard

### A.      Preliminary Injunction

 "A preliminary injunction is an extraordinary remedy never awarded as of right." Winter v. Nat. Res. Def. Council, Inc, 555 U.S. 7, 24 (2008). In requesting such relief, "[t]he moving party bears the burden of persuasion and must demonstrate, 'by a clear showing,' that the requested relief is warranted," Hosp. Staffing Sols., LLC v. Reyes, 736 F. Supp. 2d 192, 197 (D.D.C. 2010) (quoting Chaplaincy of Full Gospel Churches v. England, 454 F.3d 290, 297 (D.C. Cir. 2006)), and that "normal legal avenues are inadequate . . . to give plaintiff [the] relief he seeks." Dorfmann v. Boozer, 414 F.2d 1168, 1174 (D.C. Cir. 1969). To obtain a preliminary injunction, a plaintiff "must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." Sherley v. Sebelius, 644 F.3d 388, 392 (D.C. Cir. 2011) (quoting Winter, 555 U.S. at 20). The final two factors merge

4

when the Government is the opposing party.  Nken v. Holder, 556 U.S. 418, 435 (2009).  While the standard is, at times, described as a multifactor test, the first two factors are critical. "[W]ithout a likelihood of success on the merits, a plaintiff is not entitled to a preliminary injunction regardless of their showing on the other factors."  Brennan Ctr. for Just. at NYU Sch. of L. v. Dep't of Com., 498 F. Supp. 3d 87, 96 (D.D.C. 2020) (citing Ark. Dairy Coop. Ass'n v. U.S. Dep't of Agric., 573 F.3d 815, 832 (D.C. Cir. 2009)).  Similarly, a "failure to show a likelihood of irreparable harm [is], standing alone, sufficient" to defeat a preliminary-injunction motion.  Navajo Nation v. Azar, 292 F. Supp. 3d 508, 512 (D.D.C. 2018).

B.      Motion to Dismiss

Defendants not only oppose Plaintiff's Motion for a PI, but also move to dismiss his APA claim under Rule 12(b)(3) for improper venue and Rule 12(b)(6) for failure to state a claim. When presented with a motion to dismiss for improper venue, the court "accepts the plaintiff's well-pled factual allegations regarding venue as true, draws all reasonable inferences from those allegations in the plaintiff's favor, and resolves any factual conflicts in the plaintiff's favor." Pendleton v. Mukasey, 552 F. Supp. 2d 14, 17 (D.D.C. 2008) (citing Darby v. Dep't of Energy, 231 F. Supp. 2d 274, 276–77 (D.D.C. 2002)).  The court need not, however, accept the plaintiff's legal conclusions as true, Darby, 231 F. Supp. 2d at 277, and may consider material outside of the pleadings.  See Artis v. Greenspan, 223 F. Supp. 2d 149, 152 (D.D.C. 2002) (citing Land v. Dollar, 330 U.S. 731, 735 n.4 (1947)); see also Gianelli v. Chirkes, 377 F. Supp. 2d 49, 51 (D.D.C. 2005) ("[A] court may consider material other than the allegations of the complaint in determining whether it has jurisdiction to hear the case."), aff'd, 204 F. App'x 24 (D.C. Cir. 2006).  "Because it is the plaintiff's obligation to institute the action in a permissible forum, the plaintiff usually bears the burden of establishing that venue is proper."  Freeman v. Fallin, 254 F.

Supp. 2d 52, 56 (D.D.C. 2003). "Unless there are pertinent factual disputes to resolve, a challenge to venue presents a pure question of law." Williams v. GEICO Corp., 792 F. Supp.2d 58, 62 (D.D.C. 2011).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim upon which relief can be granted." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 552 (2007). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, id. at 555, "a complaint must contain sufficient factual matter, [if] accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). Although a plaintiff may survive a Rule 12(b)(6) motion even if "'recovery is very remote and unlikely,'" the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555–56 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

## III. Analysis

The Court first discusses Bartko's APA claim, then turns to FOIA.

### A. APA

As mentioned above, Defendants move to dismiss the APA count both for improper venue and for failure to state a claim. See MTD at 11–15. As venue is a threshold issue, Chevron U.S.A. Inc v. EPA, 45 F.4th 380, 385 (D.C. Cir. 2022), the Court starts there and then considers whether Bartko has a cause of action under the APA.

#### 1. Venue

Venue is straightforward here. In a suit against a federal agency or its officers in their official capacities — such as this one — venue lies "in any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the

claim occurred, . . . or (C) the plaintiff resides." 28 U.S.C. § 1391(e)(1). The Government objects that options (B) and (C) do not establish venue in D.C., but it conveniently ignores (A). See MTD at 11–12. In fact, all Defendants reside in this district. Plaintiff has sued BOP, along with its director and the Attorney General in their official capacities. See Am. Compl., ¶¶ 4–5. The Government concedes that the Bureau is headquartered here, see MTD at 12, and that fact alone establishes venue. As for the individual Defendants, they "reside" in the district in which they perform their official duties, regardless of where their personal residences are. Lamont v. Haig, 590 F.2d 1124, 1128 & n.19 (D.C. Cir. 1978). Both BOP's director and the Attorney General thus reside in D.C., making venue doubly and triply proper here.

### 2.    *Final Agency Action*

On the merits, Bartko's attack on the purported BOP policy stumbles out of the gate. As relevant here, the APA creates a cause of action to challenge "final agency action." 5 U.S.C. § 704; see also Trudeau v. FTC, 456 F.3d 178, 185 (D.C. Cir. 2006). An action is final only if (1) it is the "consummation of the agency's decisionmaking process," and (2) it determines a party's "rights or obligations" or "legal consequences will flow" from it. Bennett v. Spear, 520 U.S. 154, 177–78 (1997) (quotation marks omitted). A plaintiff therefore cannot challenge an agency's general position, cluster of loosely connected actions, or overall approach. Instead, he must identify a specific and discrete action — a rule, an adjudication, a binding policy — that embodies the purported violation of law and that a court can vacate or enjoin. See Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 890–91 (1990); Norton v. S. Utah Wilderness All., 542 U.S. 55, 62 (2004); Biden v. Texas, 597 U.S. 785, 809 (2022).

Like any other part of his claim, a plaintiff must plausibly allege such action to survive a motion to dismiss. "[C]onclusory statements" about agency action that rest on "bald allegations"

are therefore not enough.  Iqbal, 556 U.S. at 678, 681.  Yet that is all that Bartko offers here.  His Complaint alleges in a single conclusory sentence that "Defendants have adopted, articulated, and uniformly applied a categorical legal policy that earned time credits . . . may not be applied to reduce the length of a term of supervised release."  Am. Compl., ¶ 17.  He does not list any statements or actions by BOP that embody this purported policy.  He points to no comments from agency officials establishing it.  And he does not cite anything in the Federal Register — or anywhere else — showing that such a policy exists.  Instead, he simply dashes off a single bald assertion that a policy exists in some form, somewhere, with no supporting details to back it up.

When plaintiffs have made similarly bare assertions of a policy, courts routinely disregard them as conclusory.  Haase v. Sessions, 835 F.2d 902, 910–11 (D.C. Cir. 1987) (en banc) (holding that "more than a nebulous assertion of the existence of a 'policy' is required" and so dismissing, since court could "find nothing in the record that plausibly supports the existence of the challenged policy, even accepting as true all material allegations of the complaint") (cleaned up); Lucas v. District of Columbia, 683 F. Supp. 2d 16, 19 (D.D.C. 2010); Lowery v. Mills, 157 F.4th 729, 745–46 (5th Cir. 2025).  Faced with Bartko's "naked assertions" about a policy, "devoid of further factual enhancement," Iqbal, 556 U.S. at 678 (cleaned up), this Court will do the same.

True, complaints written by *pro se* plaintiffs like Bartko are typically "held to less stringent standards than formal pleadings drafted by lawyers."  Spence v. U.S. Dep't of Veterans Affs., 109 F.4th 531, 537–38 (D.C. Cir. 2024) (quotation marks omitted).  The problem for Bartko, however, is that he is a lawyer.  While he no longer has a law license, In re Bartko, 764 S.E.2d 553, 553 (Ga. 2014), the lower *pro se* standards exist not to benefit people missing a professional license, but instead to help parties with less sophistication.  The Circuit has thus

8

held not only barred attorneys to the usual rules, but also "businessmen with extensive litigation experience, one of whom had formal legal training," Mann v. Castiel, 681 F.3d 368, 377 (D.C. Cir. 2012), and the president of an oil company, who was "not authorized to practice law in the District of Columbia," but who had a law degree and thus was not the typical "unsophisticated *pro se* litigant." Bristol Petroleum Corp. v. Harris, 901 F.2d 165–66, 166 n.3, 168 (D.C. Cir. 1990). Because Bartko was long a barred lawyer, he cannot claim the protection of the lower pleading standards reserved for less sophisticated *pro se* plaintiffs.

In the end, it is not surprising that Bartko cannot identify any final agency action — indeed, any action at all — that BOP took relating to whether his time credits reduce his term of supervised release. In the first place, it does not decide whether and for how long someone will be placed on supervision. That call is made by a judge, who can include a term of supervised release as part of a convicted defendant's sentence. See 18 U.S.C. § 3583(a); see also Bartko, No. 09-321, Minute Entry (judge sentencing Bartko to three years of supervision). While BOP keeps watch over a prisoner while he is incarcerated, id., § 3621(a), once his imprisonment ends, so does the Bureau's involvement. If he will serve a term of supervised release after prison, then he is "released by the Bureau of Prisons to the supervision of a probation officer," who conducts the supervision and who does not work for BOP. Id., § 3624(e). At that point, whether that supervision should end early is outside the Bureau's hands. Instead, a supervisee must seek that relief from a court — where he can move to end his supervision, id., § 3583(e)(1), or file a petition for habeas corpus. See 28 U.S.C. §§ 2241, 2255. BOP, in short, did not place Bartko on supervision, determine how long such supervision should last, or decide whether to terminate it early.

9

Even if BOP's leadership thinks that time credits cannot be applied to supervised release, Plaintiff cannot challenge that interpretation unmoored from a specific action that BOP took to put it into practice. See Lujan, 497 U.S. at 890–91; Biden, 597 U.S. at 809. He has not plausibly alleged that BOP took any relevant action here, let alone final agency action. He therefore lacks a cause of action under the APA, and the Court will dismiss his APA count.

*        *        *

Because Bartko has not even stated a claim under the APA, he necessarily cannot show a likelihood of success on that claim's merits. The Court therefore also will deny his Motion for a PI on that count.

B.    FOIA

That leaves the FOIA count. Defendants do not move to dismiss it, but they do oppose Plaintiff's Motion for a PI on the claim. See MTD at 1, 17. The Court therefore limits its analysis to whether Bartko is entitled to such emergency relief.

As this Court has elsewhere explained, when a plaintiff seeks a PI in a FOIA case, he can show likelihood of success on the merits only if he shows that he is entitled to expedited processing of his FOIA request. Am. Oversight v. U.S. Dep't of Just., 2026 WL 914925, at *3–4 (D.D.C. Apr. 3, 2026). The circumstances entitling a FOIA requester to expedited processing are created by statute and the relevant agency's regulations. See 5 U.S.C. § 552(a)(6)(E)(i), (v); 28 C.F.R. § 16.5(e)(1) (relevant regulations for Department of Justice, which houses BOP, see 18 U.S.C. §§ 4041, 4042(a)). With one exception, none of those circumstances — which deal with imminent threats to life or physical safety, professional reporters, and topics of widespread and intense public interest, see 5 U.S.C. § 552(a)(6)(E)(v); 28 C.F.R. § 16.5(e)(1) — plausibly applies here, and Bartko does not argue the contrary. See PI Mot. at 12–13.

10

Instead, although Plaintiff does not cite which provision would entitle him to expedited processing (let alone acknowledge that he must show this), his arguments sound in one qualifying circumstance only: for requests involving "[t]he loss of substantial due process rights." 28 C.F.R. § 16.5(e)(1)(iii). Bartko requested records about BOP's reaction to the Ninth Circuit's decision holding that time credits must be used to reduce time on supervised release, see FOIA Req. at 1, which he says that he needs to help him litigate his several lawsuits challenging his own continued supervision. Without such records, he contends, he will be "unable to participate in that litigation on equal footing, creating a continuing procedural disadvantage." PI Mot. at 12–13.

It does not violate due process, however, to litigate without the added help of FOIA. As the Supreme Court has explained, "Nothing new by way of due process emerged with the FOIA." Renegotiation Bd. v. Bannercraft Clothing Co., 415 U.S. 1, 22 (1974). After all, if Congress had never enacted the statute, Bartko could hardly claim that having to file a complaint using only the facts available to him somehow violates his Fifth Amendment rights. Instead, he must seek information for his lawsuit in the usual way — by filing a complaint that plausibly states a claim for relief. Nothing about that violates due process.

At bottom, Bartko is trying to use a FOIA PI to achieve a kind of discovery as of right, extracting information from Defendants that Rules 8 and 12 would otherwise bar him from accessing here. Yet the Supreme Court has emphasized over and over that FOIA is not a discovery tool and cannot be used to circumvent the rules of civil litigation. Id. at 24; NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214, 242 (1978); United States v. Weber Aircraft Corp., 465 U.S. 792, 801 (1984). Having to follow those rules would not deny Bartko substantial due-process rights and so does not entitle him to expedited processing. Without a right to such

processing, he is unlikely to succeed on the merits of his PI Motion.  Am Oversight, 2026 WL

914925, at *3.  The Court therefore need not consider the other Winter factors and will deny the

Motion on that basis alone.  Ark. Dairy, 573 F.3d at 832.

**IV.   Conclusion**

Because Plaintiff has not plausibly alleged final agency action, the Court will dismiss his

APA claim and deny his Motion for a PI on both that claim and his FOIA count.


/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date:  July 31, 2026

12